UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDITH S.F.Z.,[1] | No. 1:26-cv-02966-TLN-CKD |
| Petitioner, | |
| v. | A# 246-825-802 |
| WARDEN OF THE CALIFORNIA CITY CORRECTIONAL CENTER, et al., | **ORDER** |
| Respondents. | |

This matter is before the Court on Petitioner Judith S.F.Z.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed an opposition. (ECF No. 8.) Petitioner replied. (ECF No. 13.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

///

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.   FACTUAL BACKGROUND

This matter arises out of Petitioner's challenge to the constitutionality of her civil immigration detention.  Petitioner is a 20-year-old noncitizen who first entered the United States about March 2023 as an unaccompanied minor.  (ECF No. 8-1; ECF No. 13 at 2.)  Petitioner expressed a fear of persecution or torture if she was returned to her home country.  (ECF No. 13 at 2.)  Immigration authorities detained Petitioner, placed her into removal proceedings, and later released her from custody to a sponsor on October 24, 2023.  (ECF Nos. 8-3, 8-4, 8-5.)

For the last two and a half years, Petitioner has lived in the community in California, where she has family ties.  (ECF No. 13 at 2, 9.)  Petitioner has no criminal history.  (ECF No. 8-8 at 2.)

On July 15, 2025, an immigration judge ordered Petitioner removed in absentia.  (ECF No. 8-7.)  Petitioner states she intends to file a motion to re-open her immigration proceedings to challenge that order.  (ECF No. 13 at 4.)

Over seven months after the removal order was issued, on February 24, 2026, U.S. Immigration and Customs Enforcement ("ICE") sent Petitioner a "call-in letter to report to ICE-ERO."  (ECF No. 8-10 at 2.)  Petitioner received the letter scheduling an appointment and states the letter did not indicate the reason for the appointment.  (ECF No. 1 at 2.)

On March 10, 2026, Petitioner attended the "scheduled check-in appointment" with ICE and they arrested her.  (ECF No. 1 at 2; ECF No. 8-8 at 2.)  ICE shackled Petitioner and transferred her to the California City Detention Center.  (*Id.*)

Petitioner has now been detained for over three months in civil immigration detention.  In that time, Respondents have not provided Petitioner with any hearing as to her detention.  (ECF No. 13 at 6.)  Petitioner further states she has not received medical attention for ailments, despite repeated requests.  (ECF No. 1 at 3.)  Petitioner challenges the lawfulness of her detention.

## II.   STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in

2

custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that she is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**III.   ANALYSIS**

Petitioner argues her detention violates her procedural due process rights under the Fifth Amendment.  (ECF No. 1.)  In opposition, Respondents claim Petitioner is detained in their discretion under 8 U.S.C. § 1231(a)(6) and her detention has not exceeded the presumptively reasonable six-month period.  (ECF No. 8 at 1, 3.)  Respondents also argue that Petitioner was not placed on an order of supervision.  (*Id.* at 2.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A.   Liberty Interest

As for the first step, the Court finds Petitioner has a protectable liberty interest.  "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process

3

Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025). Liberty interest may be strengthened over time. *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Here, Petitioner gained a protected liberty interest in her continued freedom when she was released into the country in 2023. Over two and a half years, Petitioner developed "enduring attachments of normal life" as described in *Morrissey*, 408 U.S. at 482, living with her sponsor and near her family. For these reasons, the Court finds Petitioner has a substantial interest in her continued freedom protected by the Fifth Amendment. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody.").

The fact that Petitioner has a final order of removal does not alter this Court's analysis. First and foremost, "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). Thus, even if ICE had discretion to arrest and detain Petitioner pursuant to the final order of removal, its exercise of that discretion must comport with due process. *See Garcia v. Andrews*, No. 1:25-CV-01006 JLT SAB, 2025 WL 2420068, at *9 (E.D. Cal. Aug. 21, 2025) (finding statutory authority to revoke bond or parole "does not mean that DHS may exercise its discretion in a manner that is inconsistent with constitutional requirements.").

Further, Respondents are incorrect to rely on 8 U.S.C. § 1231(a)(6) as the basis for Petitioner's re-detention. Respondents appear to claim § 1231(a)(6) permits ICE to arrest and re-detain released noncitizens without notice or process at any time after an order of removal has

been final for more than 90 days.  (*See* ECF No. 8 at 2–3.)  But § 1231(a)(6) "isn't a free-roaming right to arrest and detain people any time [ICE] sees fit[.]"  *Diallo v. Joyce*, No. 25-CV-9909, 2025 WL 3718477, at *2 (S.D.N.Y. Dec. 23, 2025).  Rather, § 1231(a)(6) allows for the *continued* detention, not re-detention, of certain noncitizens after the 90-day removal period.  *Id.* (citing *Zadvydas*, 533 U.S. at 683 ("After entry of a final removal order and during the 90–day removal period, however, [noncitizens] must be held in custody. § 1231(a)(2).  Subsequently, as the post-removal-period statute provides, the Government 'may' *continue* to detain a[ ] [noncitizen] who still remains here or release that [noncitizen] under supervision. § 1231(a)(6).") (emphasis added)).  That § 1231(a)(6) applies to continued detention and not re-detention is clear by the terms of its own text, wider statutory scheme, and relevant regulations.  *Id.* (finding the "and, if released" language of § 1231(a)(6) reflects that the statute applies to individuals already in detention, the government's reading would override § 1231(a)(3), and the regulations that operationalize § 1231(a)(6) refer to "continued detention").

Instead, once the 90-day removal period expires, if a non-citizen is not in custody, they are subject to supervision under § 1231(a)(3), not detention.  *Alva v. Kaiser*, No. 25-CV-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) ("As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention.");  *see also Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025) (finding that where a noncitizen's removal order "became final long ago . . . he is no longer even arguably subject to mandatory detention under § 1231(a)," but is instead subject to supervision under § 1231(a)(3)).

The Court therefore rejects Respondents' argument that Petitioner can be re-detained under § 1231(a)(6) without any additional procedures, regardless of whether she was formally placed on an order of supervision.  Petitioner has a protected liberty interest in her continued freedom protected by the Due Process Clause.

### B.    Procedural Due Process

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that interest accords with the Constitution.  The Court considers three

factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

As to the first *Mathews* factor — Petitioner's private interest — Petitioner has a substantial private interest in remaining free from detention. Petitioner was released from immigration custody nearly three years ago, she has developed ties to her community, living with her sponsor and near her family. Despite this, Petitioner has now been detained for over three months without prior notice or an opportunity to respond to the reasons for revocation of her release. She is separated from her community and she asserts she is not receiving necessary medical attention. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by her detention. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (finding similarly).

As to the second *Mathews* factor — the risk of erroneous deprivation — the Court finds the risk here is considerable where Petitioner has received no procedural safeguards such as notice or a hearing. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025); *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.") Because Petitioner has a final order of removal, the revocation of her release is governed by 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13. *Diaz*, 2025 WL 2581575, at *4. These regulations allow ICE to re-detain a noncitizen "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [non-citizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon revocation, the noncitizen must

"be notified of the reasons for the revocation of his or her release," and given "an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3). Neither process was followed here. *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) ("ICE, like any agency, 'has the duty to follow its own federal regulations.'") (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)). Instead, Petitioner was served with a letter to attend a "scheduled check-in" rather than a notice of revocation of release stating the reasons for revocation. (ECF Nos. 1 at 2; 8-8 at 2; 8-10 at 2.) Further, there is no evidence in the record that Petitioner was provided the required interview and opportunity to respond to the reasons for revocation, when she was initially detained. *See* 8 C.F.R. § 241.13(i)(3). As ICE flouted its own regulations and Petitioner was denied procedural safeguards to ensure her re-detention was justified, there is a serious risk of her liberty being erroneously deprived.

As to the third *Mathews* factor, the government's interest in detaining Petitioner without procedural safeguards is nil. *R.D.T.M.*, 2025 WL 2686866 at *6. Respondents have put forth no compelling interest to support arresting and re-detaining Petitioner without following its own regulations under 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3) or providing basic procedural safeguards like notice and a hearing. Also, there is no indication on the record that circumstances have changed such that Petitioner's removal is imminent.

Moreover, the effort and cost required to provide Petitioner with procedural safeguards are minimal and typical. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards. Notice and hearings are routine processes for Respondents. Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal. Any burden associated with the provision of these processes does not outweigh Petitioner's liberty interest and the risk of erroneous deprivation.

Petitioner was not provided with sufficient notice compliant with ICE's own regulations, nor was she provided with a hearing as to her detention either pre- or post-deprivation in over three months. Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural

due process rights.

**IV.   CONCLUSION**

Respondents detained Petitioner in violation of the Fifth Amendment and must be released.  Accordingly, IT IS HEREBY ORDERED:

1.   The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

2.   Respondents must IMMEDIATELY RELEASE Petitioner Judith S.F.Z. (A# **246-825-802**) from custody under an order of supervision.  At the time of release, Respondents must **provide a copy of this Order to Petitioner** and return all of Petitioner's documents and possessions.

3.   Respondents must file a **notice of compliance** with this Order **by June 24, 2026.**

4.   Respondents are ENJOINED from re-detaining Petitioner absent compliance with the procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i) for the revocation of release.

5.   The Clerk is directed to serve this Order on the **California City Corrections Center**.

6.   The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: June 22, 2026

_____

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

8